UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>SOLOMON JALLOH, aka "Suliman Jalloh,"<br><br>        Defendant. | Case No.: SACR 15-00129-CJC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SEVERANCE** |

**I. INTRODUCTION**

Defendant Solomon Jalloh is charged with eight counts of wire fraud in violation of 18 U.S.C. § 1343 and one sentencing enhancement pursuant to 18 U.S.C. § 3147(1). (*See generally* Dkt. 36 [First Superseding Indictment, hereinafter "FSI"].) These charges all arise out of an alleged fraudulent scheme to offer and sell investments through

-1-

Defendant's entities, Zion Capital Ventures and Zion Capital Investments (together, "Zion"). (*See generally id.*) Before the Court is Defendant's motion to sever the case into two distinct trials: one concerning the eight counts of wire fraud and the other concerning the Section 3147 sentencing enhancement. (Dkt. 53 [Motion, hereinafter "Mot."].) Defendant further seeks to prevent the government from introducing or seeking the admission of any evidence that relates to the first trial at the second trial, and vice versa. (*Id.*) For the following reasons, the motion is DENIED.

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On October 21, 2015, Defendant was charged with seven counts of wire fraud in connection with an alleged fraudulent investment scheme pursuant to 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 2 (aiding and abetting). (Dkt. 1.) Defendant entered a plea of not guilty on November 15, 2015, and was released on a $15,000 unsecured bond. On August 22, 2016, United States Pretrial Services ("PSA") filed a letter with the Court, requesting that the Court set a hearing to determine whether Defendant's bond should be revoked in light of an apparent violation of Defendant's conditions of release—namely, that he was continuing to engage in the solicitation of funds without PSA approval. (Dkt. 19.) The FBI had discovered that a prospective investor had arranged for a $15,000 wire transfer to be sent to Defendant's account after Defendant promised the investor he would double the $15,000 in two weeks through an automated trading platform. (Dkt. 21-1 at 1.) Defendant apparently had not informed the investor that he was under federal indictment for wire fraud and did not deliver the return on the investment that he promised to the investor. (*Id.* at 1–2.) While on pretrial release, Defendant also continued to hold himself out as a licensed trader to persuade potential investors to open brokerage and mutual fund accounts with him. (Dkt. 21-2.) Believing Defendant had violated the conditions of his pretrial release, the government filed a motion to revoke Defendant's bond, (Dkt. 21), and after a hearing on September 26, 2016, the Court

granted the motion, (Dkt. 27).  On February 8, 2017, the grand jury returned the FSI, adding an additional count of wire fraud and a sentencing enhancement based on the bond violations.  (FSI.)

According to the FSI, beginning in or around May 2012, Defendant knowingly and with intent to defraud devised, participated in, and executed a scheme to defraud investors and to obtain money from investors by means of materially false and fraudulent pretenses, representations, and promises and the concealment of material facts.  (*Id.* ¶ 3.) Defendant allegedly used false and fraudulent statements and written materials to induce individuals to invest in a purported "investment fund/trading program" managed by Defendant through Zion.  (*Id.* ¶ 4(a).)

To attract investors, Defendant allegedly told them that his program offered a monthly return of ten percent, Zion had made monthly returns of thirty-five percent since 2008, Zion investments were profitable (based on false account statements sent to investors), Zion had millions of dollars in a Citibank account and a Citibank banker with the phone number 800-758-9089 could verify such amounts, Zion had over $800 million under management, and Zion was partnered or affiliated with Zions Bancorporation (a NASDAQ-traded bank holding corporation headquartered in Utah).  (*Id.* ¶ 5.)  However, Defendant concealed that he would use investors' principal to pay other investors, brokers, and employees, and for his own personal use, Zion had not made monthly returns of thirty-five percent since 2008, the account statements sent to investors were false, Zion did not have over $800 million under management, Zion did not have millions of dollars in a Citibank account, and the purported Citibank banker telephone number actually belonged to Defendant.  (*Id.* ¶ 6.)

The FSI further alleges that Defendant, together with others unknown to the grand jury, transmitted or caused to be transmitted (or aided and abetted in the transmission

1  thereof) seven e-mails and telephone calls on November 13, 2013, and one e-mail on July
2  5, 2016, by means of wire and radio communication in interstate and foreign commerce
3  for the purpose of executing the scheme to defraud, constituting eight counts of wire
4  fraud. (*Id.* ¶ 8.) Finally, the FSI alleges that Defendant is subject to an enhanced penalty
5  under 18 U.S.C. § 3147(1) because he committed the eighth count of wire fraud while on
6  pretrial release. (*Id.* at 6.)

8  Defendant now asks that the Court sever this case into two distinct trials, one
9  concerning the eight counts of wire fraud and one concerning the Section 3147
10 sentencing enhancement, on the grounds of misjoinder. (Mot.) Defendant also argues
11 that in each of these severed trials, the Court should preclude the government from
12 introducing or seeking the admission of any statement, testimony, or other evidence that
13 relates or pertains to the other trial, particularly to prevent the jurors from learning that
14 Defendant is standing trial on an "in custody" basis, on the grounds that the prejudicial
15 nature of such evidence far outweighs its probative value. (*Id.*)

### III. LEGAL STANDARD

19 Federal Rule of Criminal Procedure 8(a) provides that the "indictment or
20 information may charge a defendant in separate counts with 2 or more offenses if the
21 offenses charged—whether felonies or misdemeanors or both—are of the same or similar
22 character, or are based on the same act or transaction, or are connected with or constitute
23 parts of a common scheme or plan." The word "transaction" is "interpreted flexibly" and
24 "may comprehend a series of related occurrences." *United States v. Terry*, 911 F.2d 272,
25 276 (9th Cir. 1990) (quoting *United States v. Kinslow*, 860 F.2d 963, 966 (9th Cir. 1988).
26 "Because Rule 8 is concerned with the propriety of joining offenses in the indictment, the
27 validity of the joinder is determined solely by the allegations in the indictment." *Id.*

Federal Rule of Criminal Procedure 14(a), in turn, provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." The prejudice "must have been of such magnitude that the defendant's right to a fair trial was abridged." *United States v. Lewis*, 787 F.2d 1318, 1321 (9th Cir.), *opinion amended on denial of reh'g*, 798 F.2d 1250 (9th Cir. 1986). Joinder is "the rule rather than the exception." *United States v. Whitworth*, 856 F.2d 1268, 1277 (9th Cir. 1988) (quoting *United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980)).

## IV. DISCUSSION

Defendant's position is that the first seven counts of wire fraud alleged in the FSI constitute one fraudulent scheme, and the eighth count of wire fraud that he allegedly committed while on pretrial release constitutes a separate and distinct fraudulent scheme. (Mot. at 5.) He argues that the Court should try the eight counts of wire fraud separately from the sentencing enhancement, because "allowing the Government to allege and introduce evidence to the jury at trial that the Defendant committed the two separate and distinct alleged fraudulent schemes (i.e., one prior to the Defendant's release on bond, and one after he was released on bond), along with the allegation that he committed a violation of law while he was on release on bail is so prejudicial to the Defendant that the Defendant's right to a fair trial would be denied." (*Id.* at 4–5.) He believes that the jury will "surely conclude that the Defendant is in custody and that information alone, or in combination with the time lapse between Count 1–7 and Count 8, will undoubtedly cause the jury to factor that information into its deliberations in a manner that is unduly prejudicial to the Defendant." (*Id.* at 7; *see also id.* at 9–10.) Defendant maintains that a limiting instruction will be insufficient to neutralize these risks, because the two sets of

charges are not so unrelated as to make it easy for the jury to compartmentalize such evidence. (*Id.* at 11.)

Defendant's arguments are unavailing for several reasons. First, Defendant incorrectly asserts that the FSI encompasses two separate fraudulent schemes.[1] In assessing whether an indictment meets the "same or similar character" prong of Rule 8(a), courts "consider factors such as the elements of the statutory offenses, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims." *United States v. Jawara*, 474 F.3d 565, 578 (9th Cir. 2007). As for the "common scheme or plan" prong, there is no "specifically defined the requisite nexus," but because "the words are self-defining, courts generally permit joinder under this test where the counts 'grow out of related transactions.'" *Id.* at 574.

Here, the elements of the statutory offenses are identical: all eight counts are for wire fraud, so the government will have to prove that Defendant knowingly devised a scheme to defraud, made materially fraudulent statements or omissions, acted with the intent to defraud, and used a wire communication to carry out or attempt to carry out an essential part of the scheme. *See* 18 U.S.C. § 1343; Ninth Circuit Model Criminal Jury Instructions No. 8.124 (2010 ed.). Defendant's modus operandi was also the same for all eight counts. He allegedly made the same types fraudulent statements and omissions regarding the financial health and structure of his program by email or telephone to convince individuals to invest in Zion, including his assurance that the investors would receive a ten percent return, his statement that Zion managed over $800 million and made thirty-five percent in monthly profits, and his failure to inform investors that their money

---

[1] Defendant argues that the eighth count of wire fraud was part of a different fraudulent scheme than the first seven counts, but concedes that all eight counts of wire fraud should be tried together. (Mot. at 1, 4–6.) Defendant only seeks to sever the Section 3147 sentencing enhancement from the rest of the case. (*Id.*)

would be used to pay back other investors, brokers, employees, and for Defendant's personal use. (FSI ¶¶ 4–7.) These types of representations and omissions bear directly on Defendant's knowledge and intent at the time of each of the eight wire transmissions at issue in the FSI, so there is also likely to be substantial evidentiary overlap in the government's case in chief for all eight counts. Although there is a temporal gap of nearly three years between the first seven counts and the eighth count, the FSI specifically alleges that Defendant's fraudulent scheme began in May 2012 and continued through September 2016, and that Defendant's goal for each count was uniformly to induce people to "distribute money to him" by investing in Zion. (*Id.* ¶¶ 3, 7.) Joinder in the FSI was therefore proper under Rule 8(a) because all eight counts of wire fraud were of the "same or similar character" and were part of the same "common scheme or plan."

Second, Section 3147 "does not create a separate offense." *United States v. Patterson*, 820 F.2d 1524, 1526 (9th Cir. 1987). Rather, it is "a sentence enhancement statute which simply mandates an enhanced sentence for someone who commits an offense while released on bail." *Id.* The jury will not reach the Section 3147 sentencing enhancement if they did not find Defendant guilty of the underlying eighth count of wire fraud. Accordingly, the eighth count and the sentencing enhancement are inextricably linked. A separate trial devoted solely to the sentencing enhancement would result in substantial duplication of effort and burden on witnesses. The government would have to call the victim of the eighth count of wire fraud to testify twice and present the same evidence concerning Defendant's statements and omissions to that victim twice. The Court would also be forced to expend considerable judicial resources to conduct a second trial that substantially overlaps with the evidence and issues presented in the first trial.

Nor has Defendant demonstrated that joinder would be "so manifestly prejudicial that it outweigh[s] the dominant concern with judicial economy and compel[s] exercise of

the court's discretion to sever" under Rule 14. *Whitworth*, 856 F.2d at 1277. Defendant believes that without severance, the jury will assume that he is standing trial on an in custody basis, (Mot. at 5, 7), but Section 3147 only concerns conduct committed on *pretrial release*. A Section 3147 enhancement does not necessarily mean that a Defendant's bond was revoked. That Defendant's bond was in fact revoked is irrelevant in this case, and the government has indicated that it does not intend to offer any evidence concerning the bond revocation. (Dkt. 62 at 15.)

Defendant also contends that the FSI creates "an aura of criminality on the part of the defendant that makes it nearly impossible to judge the allegations fairly" and that it attempts to "bootstrap" bad acts upon each other. (Mot. at 7, 11.) "The fact that the evidence undermines or bolsters a party's position does not makes the evidence unduly prejudicial, it makes it relevant. By definition, all relevant evidence tips the scales of the balance in one direction or the other." *Dennis v. Warden, High Desert State Prison*, No. 2:13-CV-0278 WBS CKD, 2013 WL 6198194, at *6 (E.D. Cal. Nov. 27, 2013). While evidence that Defendant committed wire fraud while on pretrial release may certainly be prejudicial to Defendant, it is not *unduly* prejudicial—it is necessary to prove this particular sentencing enhancement under Section 3147. It is not offered to lead the jury to the improper assumption that Defendant has bad character. *See United States v. Johnson*, 820 F.2d 1065, 1070 (9th Cir. 1987) ("If all the evidence of [a] separate count would be admissible upon severance, prejudice is not heightened by joinder.").

Finally, Defendant incorrectly states that limiting instructions will not adequately preserve his rights. Defendant contends that unlike in *United States v. Sarkisian*, 197 F.3d 966 (9th Cir. 1999), where the charges were so unrelated that compartmentalization of evidence was easy, here "jury instructions would not provide such clear guidance regarding compartmentalization of evidence." (Mot. at 11.) However, the Supreme Court "presumes that jurors, conscious of the gravity of their task, attend closely to the

particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985). Here, the Court may employ several simple instructions to ensure that the jury does not use the evidence presented at a single trial for an improper purpose. The Court can instruct the jury that it must evaluate each offense or enhancement separately, and that the jury's verdict on any particular count should not control the verdict on any other matter. *See* Ninth Circuit Model Criminal Jury Instructions No. 3.11 (2010 ed.). The Court can also instruct the jury that they should only reach the enhancement *if* they find Defendant guilty of the eighth count of wire fraud. These instructions will adequately ensure that the jury does not improperly presume guilt as to any count of wire fraud or the sentencing enhancement.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to sever the trial is DENIED.

Dated: April 20, 2017

_____
HONORABLE CORMAC J. CARNEY
United States District Judge